JOHN V. FARWELL COMPANY v. FRANK E. DICKINSON and Others.[1]

April 26, 1895.

No. 9223.

Insolvency—Filing Release—Fraud.

There is no provision of statute permitting a creditor to share in the proceeds of the estate of an insolvent, without filing a release, on the ground that the insolvent contracted the debt by means of false representations and fraudulently.

Same—Failure to Keep Books of Account.

*Held,* upon the evidence in this case, that the petitioning creditor is not entitled to share in the proceeds of the insolvent estate, without filing a release, on the ground that the insolvent, a partnership, failed to keep books of account or records from which its true condition could be ascertained.

In the matter of the assignment of Lucius L. Clark and Frank E. Dickinson, and the Clark-Dickinson Furniture and Carpet Company, a limited partnership, insolvents, to Jerome S. Beach, as assignee, in the district court for Hennepin county, John V. Farwell Company filed its petition praying that the creditors of the insolvents have leave to participate in the distribution of the assets without filing releases. From an order of the court, Russell, J., denying said petition, John V. Farwell Company appealed. Affirmed.

*Harrison & Noyes,* for appellant.

*Penney, Welch & Hayne,* for respondents.

COLLINS, J. 1. There is no provision in the law under which these proceedings were instituted (G. S. 1894, § 4249) permitting a creditor to share in the proceeds of the estate of an insolvent debtor,

[1] Reported in 63 N. W. 109.

without filing a release, on the ground that the insolvent contracted the debt by means of false representations and fraudulently.    This disposes of the claim and argument of petitioner's counsel based on their first assignment of error.

2. By the second assignment the question is raised whether, upon the evidence, the petitioner is entitled to participate in the distribution of the assets, without filing a release, on the ground that the insolvent firm failed to keep books of account or records from which its true condition could or can be ascertained.    Section 4249, supra.

The facts bearing upon this question are as follows:    The insolvents, copartners,—two general, and one special,—commenced to do business about May 20, 1893.    A short time before, for the purpose of raising money to put into the concern, as part of its capital, these general partners borrowed $4,000 at a bank, giving their joint note for the same.    The firm opened an account at the bank, and on said May 20 had the sum of $15,050 on deposit, and in this was included the $4,000 borrowed as before stated.    The account books kept by the firm contained proper entries as to this deposit; the deposit account, as it appeared in the ledger, debiting the bank in the sum of $15,050, May 20.    From day to day deposits were made, so that up to June 24 the total deposits, as shown by the ledger, had been $17,214.24.    At this time two items only appeared on the credit side of the deposit account in the ledger, one of date May 31, for $1,882.87, the other of date June 23, for $10,136.34; a total credit to the bank of $12,019.21, the balance on deposit being $5,195.03, according to these figures.    The firm kept a cash book, and, while its contents are not before us, we must assume from the statements of the bookkeeper, who testified that it was correctly kept, that, as to the balance in the bank, it corresponded with the ledger.    It is obvious that the firm books disclosed the true state of this deposit account, and showed that on June 23 the firm had in the bank a trifle less than $5,200.    Now, as a matter of fact, one of the general partners paid the joint note on June 23 by a firm check, thus applying $4,000 of the firm cash on hand to the liquidation of a debt incurred by the general partners, and the amount of this check was included in the total of $10,136.34 credited to the bank in the ledger account of the date last mentioned.    In passing, we remark that

from the evidence it appears that the aggregating of all items to be credited to a deposit account as kept in a ledger is the customary thing with bookkeepers, so that there was nothing unusual here. From other books kept by the firm, all of the items included in the credit of June 23 could have been discovered, except that of $4,000, which went to pay the bank note. No entry whatsoever was made as to this, save as we have stated, and where the money had gone could only have been learned by inquiry. The fact, then, was that, while the ledger and the cash book disclosed that $4,000 of the money belonging to the firm had been used for some purpose, such purpose was undisclosed by the account books. That the firm had in some way appropriated the $4,000, and did not have it among its assets, was perfectly plain. We think that, from the entries actually made, the true condition of the firm's affairs could have been ascertained, for it would have appeared that its cash assets had been decreased $4,000, without a corresponding reduction of its liabilities. Careful and accurate bookkeeping might have demanded that the sum of money so appropriated be charged up to the general partners, precisely as if it had been drawn out for personal expenses, but the statute does not require the most careful and accurate bookkeeping. Such a charge would have shown where the money went to, but would not have more clearly indicated the true condition of the firm.

Order affirmed.